**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE PLUG POWER, INC. SECURITIES LITIGATION | No. 1:21-cv-2004-ER<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**(LEAVE TO FILE MOTION TO DISMISS AND ADDITIONAL PAGES GRANTED 11/29/2022 AND 1/6/2023)** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE CONSOLIDATED SECOND AMENDED CLASS ACTION**
<u>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**</u>

Deborah S. Birnbach
Jennifer B. Luz
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Tel.: 617.570.1000
Fax: 617.523.1231
DBirnbach@goodwinlaw.com
JLuz@goodwinlaw.com

*Counsel for Defendants Plug Power Inc.,*
*Andrew Marsh, and Paul B. Middleton*

**TABLE OF CONTENTS**

**Page**

ARGUMENT .......................................................................................................... 3

I.    THE SAC FAILS TO PLEAD SCIENTER ........................................................ 3

    A.    The SAC Still Fails To Plead A Strong Inference Of Scienter For Marsh or
    Middleton Regarding The Restatement. ............................................................... 3

        1.    The Company's Motive And Opportunity To Entice SK Group To
        Enter Into The JV Does Not Support A Strong Inference of
        Scienter For Marsh Or Middleton ................................................................. 4

        2.    The SAC Fails To Plead Scienter Based On The "All Clear" Audit
        Committee Presentation On February 24, 2021 ......................................... 6

    B.    The SAC Also Fails To Plead Marsh And Middleton's Scienter As To The
    Amazon Warrant. ................................................................................................. 7

        1.    Defendants Did Not Know And Were Not Reckless In Not
        Knowing That A Waiver Agreement Would Be Finalized With
        Amazon Before December 31, 2020 ............................................................ 8

        2.    Defendants Did Not Know And Were Not Reckless In Not
        Knowing The Amount Of The Q4 Revenue Charge Before
        February 25, 2021. ..................................................................................... 10

        3.    Neither The Magnitude Of The Q4 Revenue Charge Nor The
        "Core Operations" Theory Saves The Deficient Pleading ....................... 12

    C.    The Non-Fraudulent Inferences The Court Must Weigh Are Far More
    Cogent And Compelling Than Plaintiff's Allegedly Fraudulent Ones ................ 14

II.    THE SAC DOES NOT ALLEGE ANY ACTIONABLE OMISSIONS WITH
    RESPECT TO THE AMAZON WARRANT ..................................................... 16

III.    THE SAC FAILS TO PLEAD LOSS CAUSATION ........................................ 20

CONCLUSION ...................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Amazon.com, Inc. eBook Antitrust Litig.*,
2022 WL 4581903 (S.D.N.Y. Aug. 3, 2022) ..............................................................................9

*Antigenics Inc. v. U.S. Bancorp Piper Jaffray, Inc.*,
2004 WL 51224 (S.D.N.Y. Jan. 9, 2004) .................................................................................18

*Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*,
28 F.4th 343 (2d Cir. 2022) ....................................................................................................20

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
324 F. Supp. 2d 474 (S.D.N.Y. 2004)......................................................................................14

*Bank v. GoHealth, LLC*,
2022 WL 1132503 (2d Cir. Apr. 18, 2022) .............................................................................20

*In re Bristol-Myers Squibb Co. CVR Sec. Litig.*,
2023 WL 2308151 (S.D.N.Y. Mar. 1, 2023) .....................................................................10, 13

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
750 F.3d 227 (2d Cir. 2014)....................................................................................................20

*Cheng v. Canada Goose Holdings Inc.*,
2021 WL 3077469 (S.D.N.Y. July 19, 2021) .......................................................................9, 17

*City of Brockton Ret. Sys. v. Shaw Grp. Inc.*,
540 F. Supp. 2d 464 (S.D.N.Y. 2008)...................................................................................2, 12

*City of Westland Police & Fire Ret. Sys. v. Sonic Sol'ns*,
2009 WL 942182 (N.D. Cal. Apr. 6, 2009) .............................................................................14

*In re DRDGOLD Ltd. Sec. Litig.*,
472 F. Supp. 2d 562 (S.D.N.Y. 2007).......................................................................................4

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)................................................................................................................20

*ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009).................................................................................................6, 8

*In re Focus Media Holding Ltd. Litig.*,
701 F. Supp. 2d 534 (S.D.N.Y. 2010)......................................................................................18

*In re GeoPharma, Inc. Sec. Litig.*,
411 F. Supp. 2d 434 (S.D.N.Y. 2006)..................................................................................7

*Glaser v. The9, Ltd.*,
772 F. Supp. 2d 573 (S.D.N.Y. 2011)................................................................................20

*Gray v. Wesco Aircraft Holdings, Inc.*,
454 F. Supp. 3d 366 (S.D.N.Y. 2020)................................................................................11

*Hensley v. IEC Elec. Corp.*,
2014 WL 4473373 (S.D.N.Y. Sept. 11, 2014).................................................................7, 13

*In re HEXO Corp. Sec. Litig.*,
524 F. Supp. 3d 283 (S.D.N.Y. 2021)................................................................................18

*In re Iconix Brand Grp., Inc.*,
2017 WL 4898228 (S.D.N.Y. Oct. 25, 2017).................................................................7, 11

*Jackson v. Abernathy*,
960 F.3d 94 (2d Cir. 2020)...................................................................................................3

*Janbay v. Canadian Solar, Inc.*,
2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) ....................................................................6

*Kalnit v. Eichler*,
264 F.3d 131 (2d Cir. 2001)............................................................................................5, 12

*Lipow v. Net1 UEPS Techs., Inc.*,
131 F. Supp. 3d 144 (S.D.N.Y. 2015)................................................................................17

*Liu v. Intercept Pharms., Inc.*,
2022 WL 2165621 (2d Cir. June 16, 2022) .........................................................................5

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
797 F.3d 160 (2d. Cir. 2015)..............................................................................................20

*Nguyen v. MaxPoint Interactive, Inc.*,
234 F. Supp. 3d 540 (S.D.N.Y. 2017)...........................................................................18, 19

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000).................................................................................................9

*In re Pareteum Sec. Litig.*,
2021 WL 3540779 (S.D.N.Y. Aug. 11, 2021)....................................................................13

*Plumbers & Pipefitters Loc. Union No. 719 Pension Tr. Fund v. Conseco Inc.*,
2011 WL 1198712 (S.D.N.Y. Mar. 30, 2011) ...................................................................16

*Plumbers & Steamfitters Local 137 Pension Fund v. Am. Express Co.*,
  2017 WL 4403314 (S.D.N.Y. Sept. 30, 2017)................................................................18

*Reilly v. U.S. Phys. Therapy*,
  2018 WL 3559089 (S.D.N.Y. July 23, 2018) ....................................................13, 14

*Ret. Bd. of Policemen's Annuity & Benefit Fund of Chicago v. FXCM Inc.*,
  333 F. Supp. 3d 338 (S.D.N.Y. 2018)..............................................................7, 11

*In re Rockwell Med., Inc. Sec. Litig.*,
  2018 WL 1725553 (S.D.N.Y. Mar. 30, 2018) ...................................................8, 17

*Rubinstein v. Credit Suisse Grp. AG*,
  457 F. Supp. 3d 289 (S.D.N.Y. 2020)................................................................18

*Salim v. Mobile Telesystems PJSC*,
  2022 WL 966903 (2d Cir. Mar. 31, 2022)..........................................................10

*In re Salix Pharms., Ltd.*,
  2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016)......................................................18

*Santiful & Rhoden v. Wegmans Food Mkts., Inc.*,
  2023 WL 2457801 (S.D.N.Y. Mar. 10, 2023) .....................................................20

*In re Scholastic Corp. Sec. Litig.*,
  252 F.3d 63 (2d Cir. 2001)..............................................................................13

*In re Scottish Re Grp. Sec. Litig.*,
  524 F. Supp. 2d 370 (S.D.N.Y. 2007)................................................................13

*SEC v. Wyly*,
  33 F. Supp. 3d 290 (S.D.N.Y. 2014)..................................................................19

*Slayton v. Am. Express Co.*,
  604 F.3d 758 (2d Cir. 2010).............................................................................10

*Stratte-McClure v. Morgan Stanley*,
  776 F.3d 94 (2d Cir. 2015)...............................................................................19

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
  2014 WL 7176187 (S.D.N.Y. Dec. 16, 2014) .....................................................13

*Tyler v. Liz Claiborne, Inc.*,
  814 F. Supp. 2d 323 (S.D.NY. 2011).................................................................14

*Willard v. UP Fintech Holding Ltd.*,
  527 F. Supp. 3d 609 (S.D.N.Y. 2021).................................................................19

*Woodley v. Wood*,
   2022 WL 103563 (S.D.N.Y. Jan. 11, 2022) ...........................................................................15

*Woolgar v. Kingstone Cos., Inc.*,
   477 F. Supp. 3d 193 (S.D.N.Y. 2020)......................................................................................9

**Statutes**

Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a)............................................. *passim*

**Other Authorities**

17 C.F.R. § 229.303 ......................................................................................................................18, 19

SEC Rule 10b-5, 17 C.F.R. § 240.10b-5 ................................................................................. *passim*

The Court dismissed the AC[1] in a 39-page Opinion because the allegations, "viewed individually and collectively, do not support a strong inference of scienter." MTD Opinion at 36. As to the Company's financial restatement, the SAC attempts to replead scienter based on the exact theory the Court already rejected: Plug Power allegedly got multiple technical accounting judgments wrong to attract a joint venture ("JV") with SK Group. None of the SAC's new arguments makes this theory more plausible than before. Plaintiff still does not plead that the JV personally benefited Marsh and Middleton; and the chronology remains that in January 2021, SK Group invested in Plug Power, the parties agreed to negotiate towards a potential JV, and that JV was formed five months *after* the restatement, eight months *after* SK Group appointed a director on Plug Power's board, and *after* SK Group conducted significant diligence. Plaintiff's scienter argument based on auditor KPMG's February 24, 2021 presentation to the Audit Committee fares no better. KPMG's presentation actually *refutes* any notion of scienter: KPMG gave the "all clear" for Plug Power to release earnings—noting that only routine finalization matters remained and that there were "no matters to report"—which allowed Plug Power to report earnings the following day, February 25. *See* Dkt. 104 ("Mot.") Ex. U at -1606, -1615-1616; Mot. Ex. V. Absent from the SAC is a single specific fact contrary to Plug Power's disclosures that Defendants did not know—before the auditor discovered errors while completing its audit *after* February 25, 2021—that their application of complicated, technical accounting principles was wrong, despite that the accounting: (1) was repeatedly blessed by the Company's independent auditor; (2) did not impact the Company's cash position, business operations, or economics of commercial arrangements; and (3) was not due to any override of controls or misconduct. *See* MTD Opinion at 31.

---

[1] All (i) abbreviations are defined in the Opening Brief, (ii) internal alterations, citations, and quotation marks are omitted unless otherwise noted, and (iii) emphasis is added. References to the SAC refer to the Second Amended Complaint.

Plaintiff also cannot plead scienter as to the Amazon Warrant alleged omissions. The Opposition does not even try to plead motive based on Marsh's and Middleton's stock sales or otherwise. Instead, it alleges that the Company *must have known* before December 31, 2020 that Amazon would agree to amend the Warrant Agreement; and before February 25, 2021, the amount of the Q4 Revenue Charge. Plaintiff also argues the Company *should have known* this information due to the magnitude of the Q4 Revenue Charge and because the Warrant Agreement is a "core operation." These arguments fall far short of satisfying the PSLRA's stringent scienter requirements, and the SAC cannot cite a fact, document or witness statement that Defendants knew or were reckless in not knowing that Amazon—the second largest company in the world by revenue,[2] and wielding immense bargaining power over Plug Power—would agree to amend the Warrant Agreement on December 31, 2020. The SAC has the same deficiency for the Q4 Revenue Charge being known earlier than it was disclosed. The *only fact* about the timing of the calculation is in the KPMG presentation cited by Plaintiff, where the amount of the charge was first presented to the Audit Committee on February 24 (Mot. Ex. U at -1604), before the Company quantified the charge in an earnings release the next day (SAC ¶¶ 329-30). The more compelling, non-fraudulent inference, which the Court must balance against the SAC's proposed fraudulent one, is that for the restatement, the mistake in the Company's financials concerned complex and technical accounting issues that were the basis for clean audit opinions for years; and for the warrant, the Company timely disclosed the Waiver Agreement, alerted investors when it disclosed the fact of the waiver that a "substantial" Q4 Revenue Charge was expected, and disclosed the amount of the charge once calculated as part of its next regular earnings release to investors. The more compelling inference is one that is "not sinister at all." *City of Brockton Ret. Sys. v. Shaw Grp. Inc.*, 540 F.

---

[2] *See Global 500*, FORTUNE, available at https://www.fortune.com/ranking/global500/.

2

Supp. 2d 464, 473 (S.D.N.Y. 2008). Plaintiff's failure to plead scienter alone requires dismissal.

But the SAC also fails to plead other independent elements of a Section 10(b) claim. There is no actionable omission with respect to the Amazon Warrant because the SAC fails to identify any duty to disclose earlier. And it fails to plead loss causation because the alleged corrective disclosures did not reveal any fraud. After three complaints and two 35-page opposition briefs, Plaintiff still has not pleaded facts to support any inference of scienter, much less a strong inference, any material omission as to the Amazon Warrant, and loss causation. The SAC should be dismissed with prejudice.

## ARGUMENT

### I.      THE SAC FAILS TO PLEAD SCIENTER.

#### A.      The SAC Still Fails To Plead A Strong Inference Of Scienter For Marsh or Middleton Regarding The Restatement.

After relinquishing a number of his original restatement scienter theories argued in the AC—motive to raise capital, the magnitude of the restatement, and the Company's non-disclosure of adjusted EBITDA guidance—Plaintiff now abandons most of his remaining theories. He no longer argues that Marsh's and Middleton's stock sales pursuant to Rule 10b5-1 trading plans, their Sarbanes-Oxley certifications, and the "core operations" theory can sustain scienter as to the restatement, and thus concedes they cannot. *See* Mot. at 16; Dkt. No. 106 ("Opp.") at 10-15.[3] Plaintiff's two remaining theories do not support a strong inference of scienter as to Marsh or Middleton related to the restatement, as is required to impute scienter to the Company absent an "exceedingly rare instance[]" not alleged here. *Jackson v. Abernathy*, 960 F.3d 94, 98-99 (2d Cir. 2020).[4]

---

[3] Plaintiff also does not claim to be relying on the Company's responses to the SEC's comment letters as a basis for inferring scienter related to the restatement. Mot. at 18.

[4] Plaintiff has not pleaded particularized facts to support an inference of the rare corporate scienter, similar to the claims dismissed in *Jackson* and *Magnum Hunter* (*cf.* Opp. at 10 n.2), and does not even attempt to distinguish

**1.    The Company's Motive And Opportunity To Entice SK Group To Enter Into The JV Does Not Support A Strong Inference of Scienter For Marsh Or Middleton.**

The Opposition reargues a motive this Court already rejected—to "inflate[] Plug Power's gross margins" to make "Plug Power's business appear to be growing effectively and attract[] the investment and partnership with SK Group." *See* Opp. at 12; MTD Opp. at 12. In declining to infer scienter, the Court reasoned that the "allegations suggest nothing more than the ordinary motives possessed by virtually all corporate insiders." MTD Opinion at 21-22 (collecting cases). Neither the SAC nor the Opposition suggests any "unique connection" between the alleged fraud and the JV required for scienter; there is still no allegation that inflating margins for Plug Power—*which has never reported a net profit* (SAC ¶ 80)—to attract the JV was done for any personal gain "at the expense of [Company] shareholders because the shareholders themselves would benefit from a superior transaction." *In re DRDGOLD Ltd. Sec. Litig.*, 472 F. Supp. 2d 562, 571 (S.D.N.Y. 2007); *see* MTD Br. at 16-17.[5] Plaintiff concedes that the market viewed Plug Power's partnership with SK Group as "clearly a positive development," as reflected in the increase in the Company's stock price "by 90% . . . [w]ithin 2 weeks." *See* SAC ¶¶ 149-50.

The Opposition attempts to fix the AC's deficiencies by pointing to a single statement made by an SK Group official on January 7, 2021, that allegedly shows "that SK Group had chosen to invest in and partner with Plug Power due to the Company's substantial growth in recent years and its exclusive relationship with Amazon and Walmart." *See* Opp. at 12. But, like the January 6, 2021 press release that Plaintiff relied upon in the previous round of briefing, the January 7, 2021 statement does not even mention margins, much less indicate that margins were a reason *why* SK

---

Defendants' many additional cases dismissing claims with more particularized allegations than the SAC. *See* Mot. at 14-15 (citing MTD Br. at 12 & n.7).

[5] Plaintiff also abandons any attempt to plead a fraudulent motive based on "scalability." *See* Opp. at 11-13.

Group decided to partner with and invest in the Company,[6] or that Defendants knew that margins were a reason behind SK Group's decision.[7] The article quoted in SAC (¶ 147) confirms that SK Group chose Plug Power as its partner for "two reasons – growth potential and price competitiveness," *not* past margins.[8] The only other new allegation is the even more attenuated suggestion that Defendants were motivated to get their accounting wrong for years to induce the JV, because South Korea's government was interested in hydrogen (Opp. at 12), but there is no plausible connection between the South Korean government's views on hydrogen energy and Defendants' accounting practices.[9]

It is implausible that Plug Power would jeopardize a $1.5 billion strategic investment and long-term business relationship by defrauding SK Group, who conducted detailed due diligence before investing, was purchasing nearly 10% of Plug Power's stock during the class period, and was joining the Company's board of directors. *See* MTD Br. at 16-17; MTD Reply at 4-7. If, as Plaintiff claims, Plug Power tricked SK Group, one would expect SK Group not to enter into the JV *five months after* the restatement (as the parties only had to *negotiate* in good faith towards a *potential* JV (SAC ¶ 145)) and to immediately sell its minority stake in Grove Energy Capital (a contractual right that SK Group negotiated (*id.* ¶ 223)).[10] None of this happened.[11] Further, as the

---

[6] Because Plaintiff still "has not sufficiently alleged that Plug Power's gross margins or scalability were the reasons for the SK Group's decision to partner with and invest in the Company," the Court should decline to infer scienter as it previously did. MTD Opinion at 23.

[7] Plaintiff does not plead that margins are relevant to Plug Power's growth or Amazon or Walmart relationships.

[8] *SK Kicks Off 2021 With $1.5b Investment Into US Hydrogen Company Plug Power*, THE KOREA HERALD, Jan. 7, 2021, available at https://www.koreaherald.com/common/newsprint.php?ud=20210107000834.

[9] The SAC claims no source for any knowledge or information regarding SK Group's relationship with the South Korean government, including whether SK Group felt "tremendous pressure" (Opp. at 12) to meet certain hydrogen energy goals or specific targets, much less any specific facts regarding SK Group's investing in Plug Power because of any such reason. In any event, this speculation has no bearing on *Defendants'* state of mind for purposes of scienter.

[10] Plaintiff speculates that SK Group "had no choice but to move forward" with the JV, but cites no specific facts to support that theory. *See Liu v. Intercept Pharms., Inc.*, 2022 WL 2165621, at *3 (2d Cir. June 16, 2022) (plaintiff "cannot base [his] securities fraud claim[] on speculation"); *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001) (same).

[11] SK Group's completion of the JV refutes the notion that SK Group did not sell its stake in Grove Energy Capital because "Plug Power's stock dropped precipitously in the ensuing weeks." *Cf.* Opp. at 13. As the SAC acknowledges, SK Group's ability to sell a minority stake of Grove Energy Capital was always contemplated and was a part of its

Case 1:21-cv-02004-ER    Document 108    Filed 03/24/23    Page 12 of 28

Court observed, the October 6, 2021 announcement of the JV indicated that Plug Power had "proven its ability to scale hydrogen infrastructure quickly." MTD Opinion at 23. Any connection between the alleged misstatements and the SK Group deal is "dubious at best." *ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 201 (2d Cir. 2009).

**2.    The SAC Fails To Plead Scienter Based On The "All Clear" Audit Committee Presentation On February 24, 2021.**

Plaintiff's only other scienter argument related to the restatement rests on two pages of a KPMG February 24, 2021 Audit Committee presentation.[12] KPMG's presentation, however, is not indicative of fraud; rather, it provided the Audit Committee the "all clear" so that Plug Power could disclose its earnings the next day, February 25. *See* Mot. Ex. U, Mot. Ex. V. It also confirms exactly what Plug Power disclosed: the restatement issues "were identified *after the Company reported its 2020 fourth quarter year end results on February 25, 2021* during the course of the audit [and] during preparation of this Annual Report on Form 10-K," and "did not result from any override of controls or misconduct." Mot. Ex. A at 4; Mot. Ex. X, Ex. 99.1. In the presentation, KPMG told the Audit Committee that there were "[n]o matters to report," that it found "[n]o actual or suspected fraud involving management, employees with significant roles in internal control, or where fraud results in a material misstatement," and that KPMG had "[n]o significant findings" from its assessment of "significant risks of fraud." Mot. Ex. U at -1606-1607, -1612.

Plaintiff nonetheless argues that the KPMG presentation shows scienter, based entirely on an ordinary-course uncorrected (*i.e.*, immaterial) discrepancy concerning classification of R&D

---

initial investment (SAC ¶ 223), and SK Group did not sell its stake in Grove Energy Capital (*id.* ¶ 225).

[12] Even if KPMG's presentation could serve as a basis for inferring scienter, it cannot possibly be a basis for inferring scienter for Class Period statements relating to the restatement made before February 24, 2021, *i.e.*, on November 9, 2020, November 18, 2020, and January 28, 2021. *See Janbay v. Canadian Solar, Inc.*, 2012 WL 1080306, at *11 (S.D.N.Y. Mar. 30, 2012) (communications made on and after November 11, 2009 are not supportive of scienter "with respect to all statements prior to November 11, 2009"). Nor can it serve as a basis for inferring scienter as to Marsh and Middleton, neither of whom are even alleged to have attended the February 24, 2021 Audit Committee meeting.

6

expenses. Opp. at 13-15. This argument ignores that KPMG specifically noted in the same document that cumulatively *all* discrepancies identified as part of the annual audit process had a fraction of a percent impact on the Company's net income for the quarter (–0.1%) and year (+0.04%), and *zero* impact on its balance sheet and cash flow. *See* Mot. Ex. U at -1615-1616; *Ret. Bd. of Policemen's Annuity & Benefit Fund of Chicago v. FXCM Inc.*, 333 F. Supp. 3d 338, 347 (S.D.N.Y. 2018) ("the court must consider the statement in the context of the document as a whole"); *In re GeoPharma, Inc. Sec. Litig.*, 411 F. Supp. 2d 434, 437 (S.D.N.Y. 2006) (similar).[13] Moreover, as the Court noted, "courts have only found evidence of recklessness where [there is] some impact on income" that is not "modest," and thus the *de minimus* impact on income described in the presentation raises no inference of scienter. MTD Opinion at 33; *see In re Iconix Brand Grp., Inc.*, 2017 WL 4898228, at *17 (S.D.N.Y. Oct. 25, 2017) ("allegations of GAAP violations or accounting irregularities . . . insufficient" to state a claim); *Hensley v. IEC Elec. Corp.*, 2014 WL 4473373, at *6 (S.D.N.Y. Sept. 11, 2014) (no scienter where "accounting error, however substantial . . . was highly technical [and] did not affect the company as a whole").[14] The presentation—which concluded the opposite of a restatement being required—does not indicate that any accounting errors were material enough to require correction and undermines an inference of scienter. *See* MTD Opinion at 31.[15]

## B. The SAC Also Fails To Plead Marsh And Middleton's Scienter As To The Amazon Warrant.

The Opposition does not even try to argue scienter as to the Amazon Warrant based on motive, conceding—as this Court held—that Marsh's and Middleton's stock sales during the Class

---

[13] Plaintiff concedes that the Court can consider the entire presentation in deciding this motion. *See* Mot. at 5 n.1.

[14] To the extent Plaintiff infers scienter from "the size of the accounting misstatements presented to" the committee (Opp. at 15), "magnitude . . . standing alone, doesn't raise an inference of scienter." MTD Opinion at 32-33.

[15] Contrary to Plaintiff's claim (Opp. at 14), Defendants never argued that "[a]n admission of fraud is . . . required" to establish an inference of scienter. However, the accounting discrepancies' *de minimus* impact on the Company's net income and their zero impact on its balance sheet and cash flow make the non-fraudulent inference more compelling.

Period were not unusual or suspicious, and do not suggest fraud. *See* Mot. at 19-24; Opp. at 15-24; MTD Opinion at 21-24. Plaintiff also fails to plead strong circumstantial evidence of conscious misbehavior or recklessness related to the Waiver Agreement. *ECA*, 553 F.3d at 198-99 (where plaintiff cannot plead motive and opportunity, "the strength of the circumstantial allegations must be correspondingly greater"). The Opposition does not fix the fundamental deficiency in the SAC identified in the Opening Brief: There is not a single allegation of fact, including from any document or witness, that demonstrates that Defendants knew or were reckless in not knowing that Amazon would enter the Waiver Agreement before it was signed on December 31, 2020. Similarly, there are no facts that Defendants knew or were reckless and in not knowing the amount of the Q4 Revenue Charge—while having disclosed that the charge would be "substantial" and that the benefits of the Waiver Agreement to Plug Power were simplifying its accounting of the warrants and reducing investor confusion—before February 24, 2021. *See* Mot. at 8, 25-28. Without such specific factual allegations, the SAC fails to establish any inference of scienter. *E.g.*, *In re Rockwell Med., Inc. Sec. Litig.*, 2018 WL 1725553, at \*10, 13 (S.D.N.Y. Mar. 30, 2018) (no scienter in the absence of "particularized allegations to support an inference that [d]efendants were aware of any marketing problems with respect to" company's product).

### 1. Defendants Did Not Know And Were Not Reckless In Not Knowing That A Waiver Agreement Would Be Finalized With Amazon Before December 31, 2020.

Plaintiff's inability to "identify any reports or statements containing" information showing that an agreement with Amazon was finalized—or that Defendants knew the Waiver Agreement would be signed—before December 31, 2020, is fatal to Plaintiff's claim. *See* MTD Opinion at 30.

The Opposition relies entirely on one statement from Plug Power's response to an SEC comment letter dated January 14, 2021, which states that, at the time of its third quarter disclosure, "Plug believed that this vesting would occur by the end of the fourth quarter of 2020." SAC ¶ 157.

Plaintiff does not dispute that that letter was drafted two weeks *after* the Waiver Agreement was signed, and after it was disclosed, *with the benefit of hindsight*. *See* Mot. at 26. The letter was a statement of belief, not certainty; it does not evidence Plug Power's *contemporaneous* knowledge at the time of its third quarter disclosure "that Plug Power would waive the Vesting Conditions and execute the Amazon Warrant Waiver during the fourth quarter of FY2020." *Cf.* Opp. at 15.[16] Indeed, it was *impossible* for Plug Power to know at the time of its third quarter disclosure that a waiver agreement would be finalized, as it was only "*in discussions with*" Amazon regarding the vesting of the outstanding shares, and Amazon's written consent in an amendment agreement was *required* for vesting to occur. *See* SAC ¶ 157; MTD Opinion at 32 (rejecting fraud-by-hindsight allegations); Mot. at 26 (same). As Plaintiff concedes, "corporate officials need not be clairvoyant; they are only responsible for revealing those material facts reasonably available to them." Opp. at 18 (quoting *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000)). Plug Power had no ability to force Amazon, one of the world's "largest retailer[s]," wielding "immense . . . bargaining power" over its commercial counterparties including Plug Power, to amend the Warrant Agreement under the terms and on the Company's preferred timetable. *See In re Amazon.com, Inc. eBook Antitrust Litig.*, 2022 WL 4581903, at *7 (S.D.N.Y. Aug. 3, 2022). What Amazon would do in the future was not a "fact[] reasonably available to" the Company. *See Novak*, 216 F.3d at 309.[17]

The Opposition simply speculates that "there was no question that Amazon would sign off on the proposed waiver" because: (1) the waiver "was an extraordinary payday for Amazon"; and (2) the Company's announcement of the waiver—"framed [it] as a unilateral decision by the

---

[16] *See Woolgar v. Kingstone Cos., Inc.*, 477 F. Supp. 3d 193, 237 (S.D.N.Y. 2020) ("*specific* contradictory information [must be] available to the defendants *at the same time* they made their misleading statements") (emphasis in original); *Cheng v. Canada Goose Holdings Inc.*, 2021 WL 3077469, at *7 (S.D.N.Y. July 19, 2021) ("without *contemporaneous* falsity, there can be no fraud").

[17] The January 14, 2021 letter does not show Defendants' knowledge during the Class Period (*cf.* Opp. at 18 n.13), because Amazon's consent was required to amend the Warrant Agreement, and the letter confirms that the Company and Amazon were only "in discussions" on a potential amendment at the time. *See* SAC ¶ 157.

Company" by "ma[king] no mention of Amazon's involvement." *See* Opp. at 17 & n.11. Whether the waiver was economically beneficial to Amazon, which had no economic need for this waiver agreement, is beside the point. The Warrant Agreement specifies that the Company is unable to waive vesting (or any other term of the Warrant Agreement) absent "the written consent of the Company and the Warrantholder," a fact undisputed by Plaintiff. *See* Mot. at 8 (quoting Mot. Ex. C, Ex. 10.1 at B-18). The Company's offer to waive the vesting requirements was nothing more than an unaccepted offer, and did not make a contract amendment "fait accompli and a mere formality." *Cf.* Opp. at 17; *see In re Bristol-Myers Squibb Co. CVR Sec. Litig.*, -- F. Supp. 3d --, 2023 WL 2308151, at *6 (S.D.N.Y. Mar. 1, 2023) (rejecting argument that the FDA's delayed approval of defendants' drug could show defendants' scienter because the FDA's actions "ha[ve] no bearing on *[d]efendants'* actions and knowledge"). The fact that the January 5, 2021 Form 8-K does not specifically say that Amazon's written consent is required to amend the Warrant Agreement does not change the reality that Amazon's written consent *is* required. Mot. Ex. Q.

### 2.   Defendants Did Not Know And Were Not Reckless In Not Knowing The Amount Of The Q4 Revenue Charge Before February 25, 2021.

The SAC does not allege a single internal document or conversation that Defendants knew that the calculation of the revenue charge was $399 million before the Company's disclosure of that amount. Instead, the only fact alleged in the SAC *contradicts* Plaintiff's theory. The SAC's incorporation of the KPMG presentation revealed that the $399 million charge was disclosed to the Audit Committee for the first time on the second page of the presentation on February 24, 2021, just the day before the Company quantified the charge in an earnings release. Mot. Ex. U at -1604.[18] At most, the Opposition points to two pre-2021 discussions with the Company's outside

---

[18] Courts routinely find the timely disclosure of information to negate scienter. *See Salim v. Mobile Telesystems PJSC*, 2022 WL 966903, at *2 (2d Cir. Mar. 31, 2022) (scienter claim "contradicted by" defendant's "timely disclos[ure]" of information); *Slayton v. Am. Express Co.*, 604 F.3d 758, 777 (2d Cir. 2010) ("disclosures that timely raised

advisors about the "accounting implications of the unvested Amazon warrant shares" from which the Company *could have* inferred that the Q4 Revenue Charge would be substantial. Opp. at 19. But that is exactly what the Company disclosed on January 5, 2021, when it announced the Waiver Agreement. *Id.*[19] Disclosing that the Q4 Revenue Charge would be "substantial" negates scienter.

The other alleged facts that the Opposition relies upon to argue scienter all post-date the announcement of the waiver on January 5, 2021, and have no bearing on what the Company knew *before* that date. In any event, none of the statements "demonstrate knowledge of the costs of the Amazon warrant waiver." *Cf.* Opp. at 19. Plaintiff argues that, on January 5, 2021, Defendants "were able to immediately estimate the fair value of the shares that vested as the waiver relied upon the same model that was previously used on November 9, 2020 for the third tranche shares' fair value." *See id.* Not so. While calculating the Q4 Revenue Charge involves using the same accounting model, the inputs were more complicated. Entering into the Waiver Agreement meant that Plug Power had to determine—for the first time—how many shares were likely to vest and how many were *unlikely* to vest as of the date of the Waiver Agreement, and determine the grant-date fair value for each category of shares, a complicated exercise as KPMG confirms. *See* Mot. Ex. U at -1604; Mot. at 9 & n.6. Plaintiff also relies on Marsh's January 26, 2021 statement that he had a "pretty good idea" of the Q4 Revenue Charge, but conveniently omits that Marsh explicitly stated that the calculation "hasn't been finalized." *See* SAC ¶ 172; Mot. Ex. S at 12; *see FXCM,* 333 F. Supp. 3d at 347 ("court must consider the statement in the context of the document as a whole"). Plaintiff *still* does not allege any specific contradictory facts suggesting that the

---

questions [support] an inference that . . . statements were made in good faith."); *cf.* Opp. at 16 n.6.

[19] Plaintiff cannot impute knowledge of the Q4 Revenue Charge based on the Company's having a "fully educated estimate" or knowing the "magnitude and unexpected nature of the estimated costs" (Opp. at 19, 21), as that dilutes the "high bar of actual knowledge." *Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 395 (S.D.N.Y. 2020); *see also Iconix*, 2017 WL 4898228, at *17 ("magnitude . . . alone does not create an inference of scienter").

11

calculation was complete as of January 26. *See* Mot. at 27. Finally, Plug Power's statements allegedly made in February, May, and August of 2021, provide information on the Q4 Revenue Charge, but nothing about them suggest that the Company finalized its calculation of the Q4 Revenue Charge any sooner than it was presented to the Audit Committee on February 24. *See* Opp. at 19-20; Mot. Ex. U. Whether viewed individually or collectively, the SAC does not come close to alleging that the Individual Defendants knew or were reckless in not knowing the Q4 Revenue Charge at the time of the Waiver Agreement. *See City of Brockton*, 540 F. Supp. 2d at 475 (rejecting argument that "zero plus zero plus zero plus zero plus zero adds up to something").[20]

Finally, Plaintiff attacks a straw man by arguing that "awaiting a final audit is not a recognized exception to a duty to disclose." *See* Opp. at 21.[21] Defendants never argued otherwise, but disclosed the Q4 Revenue Charge before the audit was finished, on February 25, which again, negates scienter. Plaintiff alleges no facts to contradict Marsh's representation that Plug Power was finalizing discussions of the Q4 Revenue Charge with auditors as of January 26, 2021, and Plaintiff does not argue that it was reckless for Marsh to want to finalize discussions with the auditor about complex calculations for a charge that Plaintiff claims were "massive." *See id*. at 19.

### 3.    Neither The Magnitude Of The Q4 Revenue Charge Nor The "Core Operations" Theory Saves The Deficient Pleading.

Unable to plead contemporaneous knowledge or recklessness, Plaintiff asks the Court to infer scienter related to the Amazon Warrant alleged omissions based on the magnitude of the Q4

---

[20] The Opposition's claim that "the true reason that the Company executed the waiver" was "the costs associated with the outstanding Amazon Warrant Shares had eclipsed the expected revenue from Amazon" (Opp. at 20), is belied by the SAC's allegations that the waiver was signed to simplify accounting of the warrants and reduce investor confusion. *See* SAC ¶ 130 (1/5/2021 Form 8-K: waiver will "simplify the Company's financial reporting going forward"); ¶ 156 (1/14/2021 response to SEC: "the impact of our provision for warrants is one of the most frequent inquiries we receive"); ¶ 203 (2/25/2021 Form 8-K: waiver "should simplify the Company's financial reporting going forward").

[21] As Defendants had no duty to disclose the Q4 Revenue Charge sooner than they did (*infra* at 16-20), the inference of scienter must be even stronger. *See Kalnit*, 264 F.3d at 144 (absent a "clear duty to disclose, plaintiff's scienter allegations do not provide *strong* evidence of conscious misbehavior or recklessness") (emphasis in original).

Revenue Charge and the "core operations" theory. Plaintiff's "magnitude" argument fails because, as he admits, Defendants *did* disclose that the Q4 Revenue Charge would be "substantial," which itself negates scienter. *See* Opp. at 27. Moreover, magnitude is only relevant "in tandem with other circumstantial evidence." *See id.* at 22; MTD Opinion at 33; *Bristol-Myers*, 2023 WL 2308151, at *4 ("the size of the fraud alone does not create an inference of scienter"). The other factors that were sufficient in Plaintiff's cited cases are in stark comparison to the lack of any documents or communications alleged here. *See In re Pareteum Sec. Litig.*, 2021 WL 3540779, at *16 (S.D.N.Y. Aug. 11, 2021) (knowledge alleged from advice by auditors that company's internal controls were inadequate and ineffective); *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 76-77 (2d Cir. 2001) (complaint included "detailed allegations as to what defendants knew on a daily, weekly and monthly basis"); *In re Scottish Re Grp. Sec. Litig.*, 524 F. Supp. 2d 370, 394 (S.D.N.Y. 2007) (complaint alleged facts that "all of the reasons supporting an inference that the financial statements were false . . . were known to the [defendants] at the time they made the statements").

Plaintiff's argument that the Amazon Warrant was Plug Power's "core operation" fares no better. Even assuming its viability,[22] "core operations" can only provide "additional support for an inference of scienter but could not establish scienter on its own," so fails for the same reason the "magnitude" argument fails. *See* MTD Opinion at 34-35; *Bristol-Myers*, 2023 WL 2308151, at *6. As Plaintiff concedes, Plug Power's core operation is the provision of hydrogen fuel cells to its customers. *See* Mot. at 29 (quoting SAC ¶ 362). The Warrant and Waiver Agreements—and their accounting impact—do not concern the provision of hydrogen fuel cells, and thus are not core, plain and simple. *See Reilly v. U.S. Phys. Therapy*, 2018 WL 3559089, at *18 (S.D.N.Y. July 23, 2018) ("USPH's core operation is operating physical therapy clinics, not accounting for its

---

[22] There is "considerable doubt whether the core operations doctrine survived enactment of the PSLRA." *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2014 WL 7176187, at *8 (S.D.N.Y. Dec. 16, 2014); *see* MTD Opinion at 33-34.

managing therapists non-controlling interests."); *Hensley*, 2014 WL 4473373, at *5 (Overseas Shipholding Group's "core operation is shipping, not tax policy"); *City of Westland Police & Fire Ret. Sys. v. Sonic Sol'ns*, 2009 WL 942182, at *8 (N.D. Cal. Apr. 6, 2009) (Sonic Solution's "core operation [is] manufacturing and selling digital media products," not its "stock options program").

The Opposition argues that the Amazon Warrant shares are core to Plug Power's operations because they were "essential to Plug Power's survival." Opp. at 22-24.[23] But Plaintiff does not cite any similar case finding the core operations doctrine applicable, and other cases involve facts with a far more substantial impact on the companies' businesses. *E.g.*, *Tyler v. Liz Claiborne, Inc.*, 814 F. Supp. 2d 323, 343 (S.D.N.Y. 2011) (to be core, an operation must "constitute *nearly all of a company's business*"; operations were core where "revelation *caused company to declare bankruptcy*," and where "fraud concerned *company's only product*"); *Reilly*, 2018 WL 3559089, at *18 (core operations where company "*would have been insolvent* but for the fraudulent accounting practices").[24] The Company has survived and thrives despite that the Warrant Agreement was amended more than two years ago. *See Tyler*, 814 F. Supp. 2d at 344.

## C.    The Non-Fraudulent Inferences The Court Must Weigh Are Far More Cogent And Compelling Than Plaintiff's Allegedly Fraudulent Ones.

The inference Plaintiff asks this Court to draw is not as cogent or compelling as the non-fraudulent inference. As to the restatement, Plaintiff's theory of fraud based on the Company's desire to entice the JV makes no sense. Plug Power had no incentive to jeopardize an important, long-term business relationship with its new partner. Quite the opposite. SK Group conducted due

---

[23] To the extent Plaintiff is arguing that investor and analyst interest alone can make a company's operation "core" (Opp. at 24 n.18), Defendants are aware of no cases that stand for this proposition, and Plaintiff has not cited any.

[24] Plaintiff's reliance on *Atlas Air* (Opp. at 24) is misplaced. The scienter allegations there were far more particularized, and involved widespread financial misreporting where the company overstated its earnings by $363.8 million, turning a reported surplus of $185 million to a deficit of $178 million, and touted positive results while knowing that: (1) it was losing customers; (2) its "customer relationship builder" CEO passed away leading to a 20% decline in business; and (3) the September 11, 2001 attacks resulted in an industry-wide decline. *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.,* 324 F. Supp. 2d 474, 480-81, 484 (S.D.N.Y. 2004).

14

diligence before its $1.5 billion investment; was entitled to and did appoint a director on the board with its initial investment; was entitled to sell a minority stake in the special purpose company used to acquire the stake in the Company, but did not sell; and was required to "negotiate" towards a potential JV, yet ultimately agreed to finalize the JV five months *after the* restatement. Once Plug Power discovered the errors, it promptly disclosed them. More than two years since this suit was filed, Plaintiff *still* cannot point to a single document or witness statement that anyone knew or was reckless to not have known that the accounting judgments were incorrect. The single Audit Committee presentation on which Plaintiff relies *undermines* an inference of scienter and shows that the discrepancies identified at that time had a *de minimis* impact on the Company's financials and KPMG was unconcerned. The inference that Defendants "discovered, disclosed, and corrected the accounting errors within a relatively short period of time with no fraudulent intent is simply more compelling." *See Woodley v. Wood*, 2022 WL 103563, at *10 (S.D.N.Y. Jan. 11, 2022).

As for the Amazon Warrant, unable to point to any contemporaneous evidence of knowledge or recklessness, Plaintiff argues that Defendants *must have known*, before December 31, 2020, that Amazon would amend the Warrant Agreement because it was a good deal for Amazon; and before February 25, 2021, knew the Q4 Revenue Charge amount because Plug Power was discussing with its advisors the accounting implications of the unvested warrant shares. Here, too, Plaintiff *still* cannot point to a single document or witness statement that anyone knew or was reckless to not have known: if and on what timeline Amazon—one of the largest commercial counterparties in the world over which the Company had no control—would provide the contractually required written amendment agreement to waive warrant vesting before December 31, 2020; or the amount of the difficult-to-calculate Q4 Revenue Charge before February 24, 2021. Nor does Plaintiff offer any logical explanation why Plug Power would announce an expected

15

"*substantial*" revenue charge but knowingly withhold the exact amount of the charge, leaving investors to speculate and possibly assume an even higher charge than was ultimately disclosed.[25] The non-fraudulent inference is cogent and compelling. The Company disclosed the Waiver Agreement within four business days of execution as required under the General Instructions of Form 8-K, and warned investors to expect a "substantial" fourth quarter revenue charge, which itself negates scienter; informed investors three weeks later that calculation of that charge was in progress and "hasn't been finalized"; and quantified that charge a month later after finalizing and reviewing it with its auditor. The "most compelling inference is that the [D]efendants actively and diligently sought to apprise the market of information relevant to [Plug Power's] corporate prospects" as they became aware of it. *See Plumbers & Pipefitters Loc. Union No. 719 Pension Tr. Fund v. Conseco Inc.*, 2011 WL 1198712, at \*22 (S.D.N.Y. Mar. 30, 2011).

## II.    THE SAC DOES NOT ALLEGE ANY ACTIONABLE OMISSIONS WITH RESPECT TO THE AMAZON WARRANT.

Plaintiff agrees, as he must, that omissions are only actionable "when the speaker has an underlying duty to disclose the omitted information." *See* Opp. at 25. The SAC failed to allege such a duty, and the Opposition does not cure this fatal defect. According to Plaintiff, Marsh's description of the Amazon Warrant charges as "a real positive" and "a real good item" in November 2020 triggered a duty for Defendants to disclose that Plug Power would—at some unknown point in the future and assuming it could obtain Amazon's consent—waive the vesting requirements and the revenue charge associated with that future, potential waiver, even though they could not know that charge before any agreement was finalized. *See id* at 25-26. Plaintiff's argument relies on a misreading of Marsh's statement. Marsh explained that he viewed the "higher

---

[25] Plaintiff's contention that the Company, by its January 5, 2021 Form 8-K, "led the broader market to believe the Company's fourth quarter earnings would be *marginally affected*, if at all," despite announcing that the Waiver Agreement was expected to result in a "*substantial*" charge (Opp. at 27-28), defies common sense.

warrant charges" positively because they confirm there have been "increased purchases of our products," including by the warrant customers, which resulted in "the stock['s] doing so well." *See* SAC ¶ 107. Plaintiff cites no facts to suggest Marsh did not view the higher warrant charges as "a real positive" and "a real good item," as to render those statements false. *See* Mot. at 33-34 (no duty to self-disparage). Moreover, in November 2020, it was unknown if Amazon would amend the Warrant Agreement and what the revenue charge associated with that future, potential Waiver Agreement would be, and Plaintiff does not offer evidence to suggest otherwise. *See supra* at 15-16. Marsh's statement in November 2020 did not give rise to a duty on Plug Power to speculate about what might occur in the future.[26] *See Rockwell*, 2018 WL 1725553, at *11 ("no affirmative duty to speculate"); *Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 170 (S.D.N.Y. 2015) (same). Any disclosure before the Waiver Agreement was executed would have risked seriously misleading investors, given the uncertainty until Amazon ultimately signed the agreement. It is for exactly this reason that the SEC's bright-line rule requires disclosure of material events "four business days *after* occurrence of the event." Mot. Ex. AA at 2, 21.

The Opposition next argues that the Company's January 5, 2021 disclosure of the Waiver Agreement and the expected "substantial one-time non-cash charge," required the Company to further "disclose the amount of the charge" and "the true reason behind the waiver." *See* Opp. at 27-28. In *Canada Goose*, the court rejected this very argument. Because defendants in that case disclosed "the precise phenomenon at issue," they were not further required to "disclose[] more granular, empirical, or dire information about the precise impact the timing shifts would have on the third and fourth quarters [because plaintiff] does not even allege that [d]efendants possessed

---

[26] Plaintiff does not dispute that the Company disclosed in November 2021 that the second tranche of warrant shares had fully vested and that the exercise price of the third tranche of warrant shares—one of the inputs into the calculation of the revenue charge—had be set at $13.81/share, an amount that was more than 15 times higher than the exercise price of the earlier tranches. *See* Mot. at 6-7.

or had access to any such information." 2021 WL 3077469, at *6. So too, here, where Plug Power promptly disclosed the waiver when executed, told investors that the waiver would "substantial[ly]" impact revenue, explained that the waiver would simplify future financial reporting (*supra* at 12 n.20), and Plaintiff does not plead a single fact indicating that Plug Power had calculated the Q4 Revenue Charge as of January 5, 2021. *See* SAC ¶ 172.

Plug Power complied with all regulatory requirements when it disclosed the agreement within four business days of execution. *See* Mot. Ex. Z at 1; Ex. AA at 2, 21. Plug Power had no duty to update its financial information at that time. *See Nguyen v. MaxPoint Interactive, Inc.*, 234 F. Supp. 3d 540, 546 (S.D.N.Y. 2017) (no duty "to disclose the results of a quarter in progress."); *In re Focus Media Holding Ltd. Litig.*, 701 F. Supp. 2d 534, 539-40 (S.D.N.Y. 2010) (no duty "to disclose financial information about the third quarter before that quarter had concluded"). Nor is there any duty to explain all of the reasons behind a business decision. *See Antigenics Inc. v. U.S. Bancorp Piper Jaffray, Inc.*, 2004 WL 51224, at *5 (S.D.N.Y. Jan. 9, 2004) (no omissions liability where "[plaintiff] has not shown [defendant] was under an obligation to explain the reasons why they dropped analyst coverage"). The Opposition does not cite any cases that hold otherwise.[27]

Plaintiff repackages these same theories into alleged duties to disclose under Item 303. *See* Opp. at 28-32. For the same reason Plaintiff does not allege scienter as to any Defendants (*supra* at 7-14), he does not allege any Defendants had actual knowledge of any undisclosed trends, events, or uncertainties. *See In re HEXO Corp. Sec. Litig.*, 524 F. Supp. 3d 283, 302 (S.D.N.Y.

---

[27] Plaintiff cites the "positive reaction" of analysts as evidence that the Company's disclosure was misleading (Opp. at 27), but as Plaintiff's own cited case holds, "it is impossible to determine whether the analysts who are cited are the few who were wrong, or whether their mistaken estimates are indicative of a broader market understanding. Moreover, the mere fact that certain analysts were wrong about [the] significan[ce] [of a disclosed event to the company's] financial performance does not demonstrate that [the company's] statements were responsible for the analysts' poor estimates." *Plumbers & Steamfitters Local 137 Pension Fund v. Am. Express Co.*, 2017 WL 4403314, at *14 (S.D.N.Y. Sept. 30, 2017); *cf. In re Salix Pharms., Ltd.*, 2016 WL 1629341, at *11 (S.D.N.Y. Apr. 22, 2016) (analysts misunderstood company as describing *current* inventory levels rather than as predicting *future* inventory levels).

2021) (requiring actual knowledge for Item 303 claim); *Rubinstein v. Credit Suisse Grp. AG*, 457 F. Supp. 3d 289, 300 (S.D.N.Y. 2020) (same). The Opposition tries to salvage this claim by relying on the two-part inquiry described in *Stratte-McClure* (Opp. at 29-30), but that inquiry is only triggered where Plaintiff pleads specific facts demonstrating "actual knowledge," absent here. *See Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 105 (2d Cir. 2015). Unlike here, where Plaintiff has failed to allege Defendants knew anything that was not disclosed, plaintiffs in *Stratte-McClure* plausibly alleged, based on specific statements by defendant's analysts and economist, that defendant "was faced with a known trend that was reasonably expected to have material effects on the company's financial position." *Id.* Contrary to Plaintiff's claim (Opp. at 28-32), Item 303 does not require Defendants to disclose updated financial results sooner than in quarterly reports. *Willard v. UP Fintech Holding Ltd.*, 527 F. Supp. 3d 609, 620 (S.D.N.Y. 2021) ("Item 303, however, does not require such real-time disclosures."); *Nguyen*, 234 F. Supp. 3d at 546 (similar).[28]

Finally, after abandoning his claim that Defendants' Class Period trades "are indicative of scienter" (SAC ¶¶ 374-84)—as the Court already found the opposite (MTD Opinion at 24-29)—the Opposition now argues that those same trades triggered a duty to disclose. *See* Opp. at 32-33.[29] However, as Plaintiff concedes, a duty to disclose may only be triggered if Marsh and Middleton "*trade[d] on* confidential information." *See id.* at 32 (quoting cases); *see also SEC v. Wyly*, 33 F. Supp. 3d 290, 299 (S.D.N.Y. 2014) (duty to disclose where insider trades "*on the basis of* material, nonpublic information"). No such duty exists here because Plaintiff pleads no facts to indicate that Marsh or Middleton *knew* that Amazon would execute the waiver, or the Q4 Revenue Charge,

---

[28] The Waiver Agreement was a negotiated amendment to the existing Warrant Agreement, not the "non-renewal of a contract" or the "cancelling" of an agreement. *Cf.* Opp. at 29 n.24.

[29] Far from being a "failed deal" (Opp. at 32), the Warrant Agreement cemented Amazon as an anchor client who purchased more than $200 million of Plug Power products in three years. *See* Mot. Ex. B at 51.

before they were disclosed. *Supra* at 7-14; Mot. at 20-24. [30] Moreover, Plaintiff alleges no facts to suggest that Marsh or Middleton traded *on the basis of* that information, given that their trades were routine trades pursuant to Rule 10b5-1 trading plans, which the Court found neither unusual nor suspicious. *See* MTD Opinion at 24-29. Plaintiff's attempt to undermine the import of the trading plans are baseless. Contrary to Plaintiff's claim, courts can—and routinely do—consider trading plans on a motion to dismiss. *E.g.*, MTD Opinion at 29; MTD Br. at 20 (collecting cases); *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 355-56 & n.4 (2d Cir. 2022).[31]

## III.    THE SAC FAILS TO PLEAD LOSS CAUSATION.

Plaintiff still fails to show that "the market reacted negatively in response to disclosure of the *alleged fraud*" (Opp. at 34), and thus he cannot plead loss causation. Plug Power's drop in stock price in March 2021 followed announcements on February 25 that quantified the previously-disclosed "substantial" fourth quarter revenue charge, on March 2 that the Company would not file its annual report in time, and on March 16 that it would restate prior periods. Mot. at 34-35. These announcements did not disclose any alleged fraud.[32]

### CONCLUSION

Plaintiff has had two bites at the apple, identifies no facts that would change the result, and does not seek leave to amend. The SAC should be dismissed with prejudice. *See* Mot. at 35.[33]

---

[30] For the same reason, Marsh's Rule 10b5-1 plan was not entered strategically so as to capitalize on insider knowledge, as Plaintiff claims. *Cf.* Opp. at 33.

[31] Plaintiff's cited authorities (Opp. at 33) do not hold otherwise. Rule 10b5-1 does not indicate that trading plans are irrelevant on a motion to dismiss, and the *Glaser* court *rejected* Plaintiff's very argument, observing that "that does not appear to be the law in this Circuit." *See Glaser v. The9*, *Ltd.*, 772 F. Supp. 2d 573, 593 n.14 (S.D.N.Y. 2011).

[32] Plaintiff's cases confirm he must tie his alleged losses to some alleged fraud. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 189 (2d. Cir. 2015) (plaintiffs must allege facts "to support the inference that they would have been spared all or an ascertainable portion of that loss *absent the fraud*"); *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 233 (2d Cir. 2014) ("plaintiffs must plausibly allege a *disclosure of the fraud* by which the available public information . . . was corrected"); *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005) (plaintiffs must allege a "causal connection . . . between that loss and the misrepresentation").

[33] *See also Santiful & Rhoden v. Wegmans Food Mkts., Inc.*, 2023 WL 2457801, at *5-6 (S.D.N.Y. Mar. 10, 2023) (dismissing second amended complaint with prejudice); *Bank v. GoHealth, LLC*, 2022 WL 1132503, at *2 (2d Cir. Apr. 18, 2022) (affirming dismissal of second amended complaint with prejudice).

Dated: March 24, 2023

Respectfully submitted,

PLUG POWER, INC., ANDREW MARSH, AND
PAUL B. MIDDLETON

By their attorneys,

*/s/ Deborah S. Birnbach*

Deborah S. Birnbach
Jennifer B. Luz
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Tel.: 617.570.1000
Fax: 617.523.1231
DBirnbach@goodwinlaw.com
JLuz@goodwinlaw.com

21

**CERTIFICATE OF SERVICE**

I, Deborah S. Birnbach, hereby certify that a copy of the foregoing Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss the Consolidated Second Amended Class Action Complaint For Violations of the Federal Securities Laws, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 24, 2023.

Dated: March 24, 2023                                              /s/ Deborah S. Birnbach_____